Good morning, Your Honors. May it please the Court, Ellie Rohani for the United States. With Your Honor's permission, I'd like to try to reserve three minutes for rebuttal and I will watch my time. Your Honors, this appeal presents a single question for review, and that is, what does voluntary travel mean in the context of SORNA? And voluntary travel has to mean only volitional travel for three main reasons. First, based upon the common law and common sense definition of voluntariness. Second, based upon the instructive decision from the Second Circuit in United States v. Gundy. And third, because of congressional intent and the Supreme Court's reasoning in Carr v. United States. So I think I need to interrupt you because I think there are two issues here and the double jeopardy one I think is actually quite difficult. So we don't get to the arguments you were just starting to make unless we can get past the double jeopardy issue. And could you speak to that first? Yes, Your Honor. And so Can we, can we, we have a group of high school kids who have no idea what SORNA is. Sure. So let's not use anagrams and shorthand. This is the Sex Offender Registration Notification Act that covers, on a federal level, interstate travel by someone who's committed a sex crime in another state. That's correct, Your Honor. So SORNA stands for the Sex Offender Registration and Notification Act. And in this case, Mr. Lusby traveled from Arizona to Nevada, not being in custody, and then failed to register in the state of Nevada. But if I can answer your question, Judge Friedland, the reason the double jeopardy never attached in this case is simply this. Mr. Lusby was never at risk of being found guilty. And that is the crux of what double jeopardy is. And as you noted in the reply brief, this court specifically lays out that there's two parts that this court considers in determining whether jeopardy attaches. The first is, did the district court consider some uncontested evidence? But the second, and more important in this case, is, was the defendant ever at risk of being found guilty? And in this case, Mr. Lusby was never at risk of being found guilty because in the district court, we were only talking about the second element, and the third element was hotly contested. So how do you deal with the Hill case, United States v. Hill? So Hill was the obscenity case, Your Honor. And I think the distinction in Hill is that the parties had stipulated to the facts at that point. So I know you argued that, but when I read it, all I could see was that they had stipulated to the fact that the pornography was what was talked about in the indictment. But I couldn't tell if they had actually stipulated to whether he knew that it was pornography or knew what it was or knew that he put it in the U.S. mail or knew that it was intended for delivery and all the other elements of that statute. It doesn't, the opinion doesn't talk about stipulations as to all of them, so it seems like it might have been very analogous to our situation. It could have been, but I think the other distinction for Hill is, Your Honor, that was a factual determination that was made in Hill. So the district court in Hill, when he looked at the images, the district court determined, these are just not obscene as a matter of fact. So in this case, when Judge Gordon was considering whether Mr. Lusby's travel would have been voluntary, he was determining it as a matter of law. And I think that's another distinction. In Hill, as in here, the judge was the fact finder. And in this, in Hill, the district judge was, in fact, making a factual determination that the images were not obscene. It seems like in both cases, it's a mixed question of law and fact. I mean, you have to apply the standards of what is obscenity to the material. And here, the judge had an idea of what kind of interstate travel was required and looked at the facts that were mostly agreed on by the parties, but it wasn't devoid of facts. And, Your Honor, that's fairly typical, right? So when a district judge is making a determination of law, they have to apply some facts to it. And Judge Gordon, when he was doing that, he says, I surmise that this is what's going to come out at trial based upon the proffers of the party. Now, the government made clear, and I think that's what was borne out at the revocation hearing, we weren't giving Judge Gordon all of the facts that he needed to consider for voluntary travel. There were some facts that we thought were relevant to the question, the very narrow question that he was answering as a matter of law. I think the other sort of wrinkle in this case, Your Honor, is that the government's position is this is something that Mr. Lusby didn't really bring up himself. This is something that Judge Gordon sort of... You argue that, but he brought up something close to it. I mean, he talked about what the purpose of the interstate travel was, and that's how they got down this track, as far as I can tell. Right. And so Mr. Lusby's argument was that under Carr, he had to be traveling for the purpose of evading. So that language doesn't appear anywhere in Carr to begin with, so that for the purpose of evading. So the government's position was once you determine that Mr. Lusby, at least at the district court level, once you determine that Mr. Lusby had not registered as a sex offender in Nevada, his entire argument falls apart. That was what we were responding to. That's how we read it. I think that that piqued Judge Gordon's interest on another issue, and Judge Gordon addressed that. He said, I don't think he laid it out as clearly as he seems to think that he has, but I'm interested in this issue, and Judge Gordon saw it as a jurisdictional issue that he needed to address. Of course, later on, he determined that it was not just a jurisdictional issue, and we agree that it's not just a jurisdictional issue. But that's how this developed in the district court. But when we're talking about a bench trial, how do we divide the dividing line between a proceeding before the fact finder, who's going to make the decision in the bench trial that involves facts and law and is about whether the person is guilty? Why shouldn't we consider this pretrial proceeding to really just be part of the bench trial? Your Honor, I think that the crux has to be, was Mr. Lusby at risk of being found guilty? So if the exact same thing had occurred after opening statements in a bench trial, and Judge Gordon ruled exactly how he did, even though he was 100% wrong, you could not appeal the not guilty dismissal. I think that's a closer question based upon Hill and Patrick. I think that in the- Isn't that very clear under Evans? I think it's a much narrower question because jeopardy, I guess if you think about the quintessential time that jeopardy attaches is when your first witness is sworn and the district judge starts to hear that evidence in the case of a bench trial. So I don't think at that point that we would be appealing this unless it was truly only a question of law. There is some authority that suggests that even at a Rule 29 type of stage that the government can appeal a pure question of law. I just think that this question is a little bit, in this case, because it's a much closer question I think that we have a different, we would take a different position. And so Your Honor, I think that ultimately what this comes down to, and I think this is the- I'm sorry, can you just explain that again? So you're saying that because this is a pure question of law, it's treated differently, but Evans was a pure question of law. So I'm not entirely sure I understand what your distinction of Evans is at that point. And Your Honor, I'm not speaking specifically to Evans. I'm speaking, I guess, as a general matter. The idea that the government could hypothetically, even after a Rule 29 motion being granted, could appeal certain questions of law, and again, this is a very narrow- It depends on a lot of different things, so I don't want to speak too broadly. So in Evans, it is a question of law. I think it is very clear in Evans, but there are other situations where the government might be able to take that appeal, and I don't want to speak too broadly without facts to sort of build into that hypothetical, Your Honor. So I understand the holding of Evans. I understand when jeopardy attaches. I understand that even if it's a question of law, there are instances where the government couldn't appeal, but I think there are also instances where the government could appeal, and I don't want to speak too broadly without sort of facts to fit into that hypothetical. And in terms of voluntariness, Your Honor, the one point that I think is most important is I recognize that Gundy is not binding, but I certainly think it's instructive. It's the only case in the country that we could find on both sides that even sort of relates to this issue. But I think when you look at Carr v. United States, which is relied upon heavily by Mr. The Supreme Court specifically says that the government, the federal government, has a special interest in monitoring and prosecuting sex offenders who are under federal supervision, which is exactly what's happening in this case. Mr. Lusby is on federal supervision for a prior SORNA offense. He traveled from Arizona to Nevada, and he wasn't in custody at that time, and I think when you look at that, the federal government does have a special interest in prosecuting him, and that I think by itself makes his travel voluntary. I'm happy to answer any other questions, but I'd like to reserve some time. Are you, so do you think, are you not disputing that voluntariness is required? Your Honor, at this point, I would agree that voluntariness is required, and I think that that's the position that we took in the district court as well. I know that the way that the brief is written is slightly more open to interpretation. I don't think that every act up until the point of the culmination of the crime needs to be voluntary, but the position that we took in the district court, and that's at ER 74 and 75, was that voluntariness of travel is fine, that that is a requirement, and that in this case, that was met. Okay. I'll still give you time for a rebuttal because this is a very difficult case. Yes, Your Honor. If you have any other questions, I'm happy to answer them. So, yeah, I'll still give you two minutes for rebuttal. Thank you, Your Honor. Good morning, Your Honors. I'm Kathleen Bliss, and I'm appearing on behalf of Mr. Lesby. I do think that the double jeopardy issue is something that this Court must address, and as this circuit, I believe in 1975, pointed out in the case United States v. Schott, C-H-O-A-T-E, it's not a hard and fast rule regarding double jeopardy. Was Mr. Lesby at risk of being found guilty when these proceedings started in front of Judge Gordon? Of course he was, except that Judge Gordon found that his travel from Nevada to Arizona was in custody, of course compelled, and his return travel back from Arizona where he was released pursuant to a court order to appear in Nevada at the residential house, that was also compelled, and therefore it could not be involuntary. And so— But when you say that he was at risk of being found guilty, at this pretrial proceeding, I didn't understand them to be talking about whether he was already registered in Nevada, whether he thought he was already registered in Nevada. It seemed like it was only about this question of whether the travel was enough, which is only part of the crime, so you can't be found guilty with just that element. Correct. But, yes, Your Honor, I understand. However, the point that I'm trying to make here is that he — the government failed on an essential element. Under Carr, I don't think there's any doubt whatsoever that knowingly traveling in interstate commerce is an essential element, that the government has to prove beyond a reasonable doubt. That's true. But would you get back to the issue of the voluntariness? Yes, Your Honor. He's serving prison term in Arizona. He could have left the penal institution and lived in Tucson and nothing would ever have happened. But he chose to go back to Nevada. It was his choice to go back to Nevada. Why is that involuntary? Your Honor, I respectfully disagree. He had no choice but to return to Nevada or he would be arrested for failure to report. Excuse me, I'm sorry. He could report in Arizona. There was nothing to stop him from reporting in Arizona. But he chose to go to Nevada, his choice. Well, I think there are two issues here. Had he chosen to stay in Arizona, he would have had to report and register as a sex offender. In Arizona, no crime, no problem. But he was under an order of modification because only the United States District Court for the District of Nevada had jurisdiction over him because that was the sentencing district for his offense that he had pleaded guilty to. So he had to report back to Nevada. And there was a modification because if he hadn't had a warrant in Oregon, he would have likely been accepted to spend the last six months of his custody at a halfway house in Nevada. However, he was denied that. And that's pretty typical with the BOP because that was his last place of residence was in Nevada. And he voluntarily wanted to go back and he wanted to go back and serve it in Nevada. He wanted to go back to serve his residence assignment requirement in Nevada. Nevada had jurisdiction over him because that's where he was. Am I right or wrong? He asked to go back to Nevada. He chose to go back to Nevada to serve this? No, I disagree. He chose to go back to Nevada to a halfway house because he would have been on the streets. He had to go back to Nevada because he was under an order to do so. And Nevada had federal jurisdiction over him for his, I believe, eight-year, at the time, period of supervised release. So he's under supervised release in Nevada. And if he splits, which he did, he would be prosecuted for failure to report. So that's why he was revoked. So he was clearly under a compulsion, a court order, to return to Nevada. So I don't think there was anything voluntary about it at all. Had he not gone back to Nevada, had he stuck around in Arizona, he could have had a violation of his supervised release by Judge Gordon in Nevada. So that's why it's not like, it's, this is not factually like Gundy. In Gundy, you're involving three states there. And Mr. Gundy requested a furlough to spend his time in New York. There was no jurisdiction of supervision by the federal court in New York. So it was like a courtesy furlough transfer. Mr. Lusby here did not have that choice. He had to report. It seems like the government has argued, though, that he requested going back to Nevada and could have requested staying in Arizona and suggest anyway that that could have been granted. But that's not where the court order lay. And we don't have any facts that would support that. All we have is a court order saying, get back to Nevada. And I mean, really, this is about a bus ticket, okay? Because the government conceded that had they put him in a U.S. Marshall car and driven him, you know, across the Colorado River and the Hoover Dam, that, of course, that would have been involuntary travel. But the fact that the BOP put him on a Greyhound bus and chose the cheaper method, as opposed to transporting him on a BOP or federal bus. It was a matter of convenience for the Bureau of Prisons. So I think that we have to consider that, too. There's no doubt he was returning to Nevada because he had to, because of Judge Gordon's order. So. But you started out by saying he was at risk of being found guilty. That only in the sense of he was charged with a crime and Judge Gordon was ultimately going to be the trier of fact. But if he had asked for a jury trial, Judge Gordon couldn't have found him guilty on the basis of anything that was done in the pretrial hearings. So I don't get why he was at risk of being found guilty. Judge Gordon could have found that his travel was voluntary. That put him at risk of being found guilty. Not by Judge Gordon. I mean, it still would have been a factual issue for the trier of fact. Judge Gordon? Well, yes, but he wasn't doing the trial at that point. He was acting more like the judge handling pretrial motions. But in Hill and Patrick, the courts were making decisions on pretrial motions. And so- With stipulated facts. Well, I, okay, this is what, I think, this is the issue that I think you have to decide. And I think it is a very difficult issue. The facts were essentially stipulated here. Nobody doubts that he was returning to Nevada, having begun his compelled transfer to Arizona, because there's no BOP prison in there, BOP put him on the bus, Greyhound bus, then, based upon that ticket, transported him. So those really are not facts in dispute. What's disputed by the government that the court denied as a matter of law is that this scenario was somehow voluntary. And Judge Gordon said, as a matter of law, it can't be voluntary, because he was put on a BOP-sponsored bus. So can you point us to any case where it was clear there were other disputed elements, but a pretrial hearing about one element was enough for Jeopardy to attach? I don't think I can. The only thing I've got, really, is the Hill case and the Patrick case. And I think going back to the cases of Martin Lennon and Sir Face, I think you have to look at when someone is in Jeopardy and what that means. And then, as a matter of law, on a jurisdictional as well as essential element, could it have gone the other way for Mr. Lusby, had Judge Gordon decided otherwise and accepted the government's argument? He did not. And so this is something else that I think about with respect to this case, because there really isn't a lot out there. I think it's a very difficult decision. So let's go back to Nevada. You remand back to Judge Gordon. Isn't it res judicata that he's found that an essential element cannot be met, that the travel was involuntary, and therefore, the three elements of the Sexual Offender Registration Act cannot be met? And how about the government's admission? Well, I think the question is whether we can review that. So, I mean, if we reviewed that and decided he was wrong, then he'd have to not say that again on remand. I don't know. I don't know, because he's a trier of fact. And this is something that I've thought about a lot, is isn't it res judicata? It certainly is an admission under the federal rules of evidence, the government's concession, that can it not, under those facts that we had here, it can't show that the travel was voluntary. Because the matter of law decision by Judge Gordon. So if we go back, the first thing I'm going to do is argue that we have res judicata as to an element by the court, and that the government concedes under those specific facts that were before Judge Gordon, that it can't prove its case. Judgment of acquittal. You could try that, but it's not going to succeed. It seems like if we reverse, that's not going to work. Would you mind just sort of focusing, coming back and focus on the Grundy case out of the Second Circuit? I'm not even sure it's a published opinion, but assuming that the logic of it, we should consider, how do you, do you think Grundy helps you, or does it hurt you? I don't think Grundy applies here, because I think in Grundy you had two distinct factors. One being that it appears as though the Second Circuit assumed arguendo that the travel was voluntary. Here we don't have that. We have a finding as a matter of law that it was involuntary. Also, in Grundy, you've got really three states at play. You have his drug conviction in Pennsylvania. You have the sexual offense in Maryland, I believe. He's serving his time, requests a furlough where he can spend the rest of his time in the Bronx and New York. So I think it's just factually an opposite, and I think that there the court assumed that the travel was voluntary with the furlough request. Did that answer your question, Your Honor? Yeah, I just want to know your comments on it. Thank you. And Mr. Lesby's already served a term of imprisonment for this behavior. No. I mean, on a supervised release violation, hasn't he? Yes. Yeah. He pled guilty to failing to register when he moved from Oregon. Right. I understand that, but he's been in custody for a couple of years because he failed to report or failed to arrive at the halfway house and was living on the streets. That had nothing to do with this registration issue, which is definitely a disputed issue. And the last thing, because I am blinking like crazy. You're over time. The last thing that I think this court needs to consider, because it's also very important, Nevada could have prosecuted him and still can prosecute him. Had there been an actual failure to register? But that's still in dispute, right? I assume you're arguing that he didn't fail to register in Nevada. Yes, Your Honor. But even if he originally registered, he didn't register when he was back in the state of Nevada living on the streets. Because we would submit that he had registered. Right. You think he was already registered or at least reasonably thought he was or something like that. You have to register where your address is. The whole idea is letting authorities know where you are. But the knowingly fails to register requirement, the third element, we would submit if we go to trial that he thought he had registered in Nevada. Now, and we just don't – there are no facts before us that he's going to the residential place. Let's say he behaved and didn't flee or abscond. He goes to the facility. He does his – I think it was 90 days. Then he goes back to the residence that's on file with Nevada. We wouldn't be here. Thank you. Thank you. Thank you, counsel. Thank you. I think we should give even more rebuttal time because we went over in the last argument, so let's put four minutes on the clock, please. I'm going to try to watch the clock, Your Honor. Your Honor, I want to start with Judge Lasnik and Judge Friedland's questions about double jeopardy. And the question that you asked is, can you point to a single case where there were other disputed issues? Well, of course we can't because it doesn't implicate the underlying policy considerations of double jeopardy. And I can point, Your Honors, to United States v. Olson of this court. And I just want to read one very brief portion because I think it really hits on this. It says, to the limited extent, and this is on the very last 1128 and 1129. First, this court said, to the limited extent that the trial court in this case heard proffers of evidence during the hearing on the motion to dismiss. It did so without subjecting Olson to the risk that he would be found guilty and thus without affecting the interests protected by the double jeopardy clause. And on 1129, the court said, the trial court made a purely legal determination about the sufficiency of the indictment. Without applying that evidence to the question of guilt or innocence, jeopardy does not attach without the consideration of some or all of the factual elements of the case. Wasn't Olson, so I'm trying to refresh my recollection, but I thought Olson was really just about the face of the indictment. Correct. And the application of another, a previous decision on whether it had rendered that indictment effective. And so in that sense, I mean, we know that just looking at the indictment without looking at any facts is definitely not jeopardy attaching. We also have the debate clause case. There are several cases that say that, but this isn't just the face of the indictment because there was this discussion of the facts and whether it counted as voluntariness. So I just am not sure Olson is really on point. But I think that the rule that is derived from Olson is on point, Your Honor, and that the second part of that is that there has to be a risk of the finding of guilt based upon the resolution of a fact issue. And Ms. Bliss just told you that she still contests that third element, meaning that there was no way that Judge Gordon could have ever found Mr. Lusby guilty or not guilty for that matter because he didn't know ultimately what additional evidence the government would put forth. It seems, though, like we're, at least from what I can tell, this is just a novel situation. I'm not sure it's really analogous to the cases either of you are citing exactly. So we have a new question? Perhaps, Your Honor. I think it's also important that I need to dispute what Ms. Bliss said, where she said that the facts were essentially stipulated in this case. They weren't. The government contended that it could prove physically volitional travel, which that's the position we've taken on appeal, and we still believe that we can prove physically volitional travel. Nobody held a gun to Mr. Lusby's head. But I don't think that's disputed. I mean, I think, like when you said you don't contest that voluntariness is a requirement, it seems like you do contest the meaning of voluntariness there. Correct. And so I don't think you really are disputing what happened with the bus ticket and whether he, you know, could have gone to McDonald's instead. I mean, you're just discussing whether that counts. And it was your strategy to move to dismiss based on, if that's your ruling, Judge, we can't meet that standard. Specifically, because we disagree with your definition, we'd like the Ninth Circuit to review this and tell you that you're wrong, so that we can meet. So why did we wait until the end of trial? Or I guess then you couldn't have done that. I don't know. It's like a real puzzle. That's the issue, Your Honor. And so I'll note that if you look at Judge Gordon's comments, he says, I'm not prejudging the facts. I know what the government's trying to do. Judge Gordon thought we could take an interlocutory appeal, and we're the ones who had to tell him, you know, sort of not really. Sorry, end of trial is a terrible question, because obviously you couldn't have done that. But what about an interlocutory appeal? Why couldn't you have taken an interlocutory appeal? Your Honor, the position of the department was that we needed him to actually dismiss it so that we could take the appeal. And his clarification of the legal issue was not sufficient for us to take an interlocutory appeal under the limited nature of the statute. That was the understanding of the department at the time. And I'll note that the way that the discussion had transpired. How did the department have that? I mean, is there any other case that the department has looked at for figuring this out that we should be looking at or anything else? No, Your Honor. And I'll just note that the way that we looked at the very limited nature of the interlocutory appeal statute that the government can actually take that appeal, that's just not how we read the statute, and that's why we sought the dismissal. And so if you look at the language of that, I don't – there's very specific types of decisions that can be appealed, and because Judge Gordon had denied the motion to dismiss without prejudice, there's sort of nothing for us to appeal at that point. We needed to get clarification, and we needed to be able to have some type of decision to appeal. That's why we asked for clarification twice on an emergency basis. Your Honor, the other thing that I wanted to answer Judge Wallace's question regarding Gundy, the Second Circuit did not assume that the travel was voluntary. The Second Circuit assumed arguendo that if voluntariness is required, the facts of that case was sufficient to find voluntariness. And I don't think that there's a huge distinction between the fact that there was three states versus two states. The fact of the matter is Mr. Gundy was in custody when he was taken from Maryland to Pennsylvania, and he was released from custody in Pennsylvania when he traveled to New York. So if you focus on that travel from Pennsylvania to New York, it's essentially the same as what happened in Mr. Lusby's situation. Mr. Lusby has not been punished, Judge Lasnik, for this particular violation. The supervised release violation that proceeded was on a state violation. It was not on a SORNA violation, specifically because we were concerned about what Judge Gordon's definition of voluntariness was going to be, even in the supervised release context. And so he's been punished for the supervised release violation. He has not been punished for the SORNA violation. So when you say a state violation, what do you mean by that? So there was a new law violation that was charged in the supervised release context, but it was a violation of the Nevada Revised Statute, not 18 United States Code Section 2250. But also about sex offender registration? No. Yes, but under state law. Right, but, I mean, it's the same behavior. Yeah. Now, of course, he could be prosecuted under both the state and the federal laws, and you would not run into double jeopardy because it's separate sovereigns. No, Your Honor, and I'll note that Mr. Lusby has not been prosecuted by the state of Nevada for this, so there's no double jeopardy issues. I think it's really important for the government to have an answer on this issue generally, because Las Vegas is very transient generally. A lot of sex offenders happen to come and reside there, either under homeless status or in absconder status. We'd just like to have an answer, quite frankly, to know what we can do about these offenders, and I think Mr. Lusby's situation kind of highlights that. Okay. Your Honors, unless you have any additional questions, the last point that I want to make is, if you look at the actual order in the judgment, the judgment does not say, please travel to Nevada and then live on the lam. The judgment says, report to your probation officer within 72 hours, and Mr. Lusby didn't do that. And Mr. Lusby traveled. So to say that there's legal compulsion to travel, he could have just as equally traveled to Kansas and registered as a sex offender in Kansas. Equally been in violation of Judge Gordon's. He did part of what was ordered. He traveled to Nevada. He just didn't then do what he was supposed to do next. And I would submit, Your Honor, that I think it's an incidental consequence of what he needed to do to be able to abide by that condition. But in the end, he's admitted at this point that he did not abide by that condition. So I think it's difficult for him to seek the protection of that condition when he's admitted at this point that he's violated it. If Your Honors have any other questions, otherwise we would ask that you remand for further proceedings. Thank you. Thank you both sides for the very helpful arguments in this very difficult case. That case is submitted.
judges: Wallace, Friedland, Lasnik